IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL MORALES | : | |
| Plaintiff | : | |
| v | : | Civil Case No. L-10-1167 |
| PENSION BENEFIT GUARANTY CORPORATION | : | |
| Defendant | : | |

o0o
**MEMORANDUM**

This case arises under the federal Freedom of Information Act ("FOIA") 5 U.S.C. § 552 et seq., and the Privacy Act, 5 U.S.C. § 552a et seq. Plaintiff Paul Morales seeks disclosure of various documents that he requested from the Defendant, Pension Benefit Guarantee Corporation ("PBGC") pursuant to those statutes. Now pending before the Court are five motions: (i) PBGC's initial Motion to Dismiss (Docket No. 9); (ii) PBGC's Motion to Withdraw its initial Motion to Dismiss (Docket No. 12); (iii) PBGC's second Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket No. 13); (iv) Morales's Supplemental Motion for Attorneys' Fees (Docket No. 38); and (v) PBCG's Motion to Strike Morales's Supplemental Motion for Attorneys' Fees (Docket No. 39). The issues have been comprehensively briefed, and on September 29, 2011 the Court convened a hearing and heard oral argument. For the reasons stated herein, the Court will, by separate Order, award summary judgment in favor of PBGC and deny Morales's requests for an award of costs and fees.

I.     BACKGROUND

The procedural history of this case, which is unusually complex, is fully set forth in the parties' briefs and need not be fully restated here.  In brief, Morales has filed nine separate FOIA and Privacy Act requests for access to documents in the custody of PBGC, against which he has a presently pending Title VII action in the United States District Court for the District of Columbia.  See Morales v. Solis, Civil No. HHK-10-221 (D.D.C.).  PBGC has now produced some 2,200 pages of documents in response.

On March 29, 2010, PBGC mailed Morales a letter informing him that it was suspending processing of his two pending requests for failure to pay an outstanding invoice from 2009.  Though Morales promptly sent payment, PBGC apparently misplaced his check, and did not acknowledge receipt until April 22, 2010.  In the meantime, Morales submitted two additional requests.  With slight exceptions, these were duplicative of his already pending requests.

On May 11, 2010, Morales filed the instant suit, alleging that he had not received full and timely responses to his four outstanding requests.  His complaint sought both declaratory and injunctive relief, as well as costs and attorneys' fees.  Following the institution of suit, PBGC continued to process Morales's requests.  On May 13, 2010, it made a partial disclosure of documents and informed Morales that it was continuing to search for responsive records.

On May 24, 2010, PBGC sent Morales a letter informing him that it was again suspending its search because it was approaching the $500 initial limit on processing costs set by Morales, who had asked that he be consulted if anticipated fees might exceed this amount.  Receiving no reply to this correspondence, PBGC, on June 25, 2010, filed a Motion to Dismiss on the grounds that Morales had failed to exhaust his administrative remedies by neglecting to provide assurance that he would pay the cost of processing his requests.  See Docket No. 9.

On July 13, 2010, Morales filed a Response in Opposition, in which he pledged to pay for all "properly assessed" fees. Docket No. 11 at 20. Based on this representation, PBGC resumed processing Morales's requests. On July 30, 2010, PBGC turned over what it asserted were all responsive documents. On August 12, 2010, it moved for leave to withdraw its initial Motion to Dismiss and to substitute a new Motion to Dismiss or, in the Alternative, for Summary Judgment. See Docket Nos. 12 and 13. While PBGC's initial Motion rested on the ground of failure to exhaust, its new Motion asserts that, because it has now produced all responsive documents, Morales's case is moot. To the extent Morales challenges any of the limited redactions in the documents he received, PBGC further argues that the redactions were proper and that it is entitled to summary judgment.

## II.     STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no

evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

### III.  ANALYSIS

#### a. Initial Motion to Dismiss and Motion to Withdraw

Both FOIA and the Privacy Act provide that documents must be disclosed within certain specified time periods after "receipt" of a request.  While "receipt" is ordinarily defined as the date on which the agency physically comes into possession of the request, in certain situations a request is not deemed "received" by PBGC until the requester has paid the cost of processing the request or made an assurance of payment.  29 C.F.R. § 4901.13.  As relevant here, advance payment or an assurance of payment is required if the requester has previously failed to pay a fee in a timely fashion. See id.; 29 C.F.R. § 4901.33.

PBGC's initial Motion to Dismiss asserted that Morales could not maintain suit because he had failed to exhaust his administrative remedies.  Specifically, it alleged that the processing of the four requests that are the subject of this suit had been suspended because Morales had already incurred $560 of fees and because Morales's counsel had included a provision in the request stating, "[i]f you anticipate that in order to satisfy this request the total cost . . . will be in excess of $500.00, please contact me . . . prior to proceeding so that I can have the opportunity to narrow the request."

Because Morales had previously failed to pay a properly assessed balance, PBGC was entitled to advance payment or reasonable assurances that Morales would pay.  Morales's opposition to PBGC's Motion stated that he was prepared to pay, but he also repeated certain objections that he had previously lodged to the propriety of some fees.  For example, Morales

claims that he was overcharged insofar as PBGC searched for, copied, and produced certain documents that exceeded the scope of his request.

Based on this response, PBGC resumed production and moved to withdraw its Motion. Morales urges that the agency should not be permitted to withdraw the Motion because it was frivolous and filed in bad faith. He claims that he has always been willing to pay any properly assessed fees, and that PBGC's Motion, coupled with suspension of document production, was a disingenuous stall tactic. Morales urges the Court to sanction PBGC by requiring it to pay all attorneys' fees that he incurred in responding to the agency's Motion.

For purposes of the Motion to Withdraw, the Court need not decide whether PBGC was ultimately justified in putting its search on hold, because there is no evidence of bad faith on its part. Considering Morales's prior nonpayment and his counsel's request to be consulted when costs neared the $500 mark, PBGC was entitled to suspend work until Morales provided assurances of reimbursement for the costs of continued production. See Pollack v. Dept. of Justice, 49 F.3d 115, 120 (4th Cir. 1995). PBGC filed its Motion to Dismiss only after waiting a full month and receiving no response to its letter requesting such assurances. It promptly moved to withdraw the Motion once Morales's promise to pay and its subsequent processing of his requests had mooted this dispute. PBGC's Motion to Withdraw will be granted, and Morales's request for an award of fees in connection with the briefing of the now-withdrawn Motion will be denied.

### b. Second Motion to Dismiss or, Alternatively, for Summary Judgment

PBGC's revised Motion argues that this case should be dismissed as moot because Morales has now received the relief requested in the Complaint. Furthermore, the agency argues

that to the extent Morales challenges the withholding or redaction of certain documents, it is entitled to summary judgment. The Court agrees.

FOIA provides that, subject to certain statutory exemptions, federal agencies shall "upon any request for records which reasonably describe such records . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Similarly, the Privacy Act, 5 U.S.C. § 552A, provides:

> Each agency that maintains a system of records shall—
> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof . . . .

5 U.S.C. § 552A(d).

A FOIA action becomes moot when, during the pendency of a lawsuit seeking the disclosure of documents, the requester is provided with all documents responsive to his request. See Regional Mgmt. Corp. v. Legal Servs. Corp., 186 F.3d 457, 465 (4th Cir. 1999); see also Cornucopia Inst. v. U.S. Dep't of Agric., 560 F.3d 673, 675 (7th Cir. 2009); Lechliter v. DOD, 371 F. Supp. 2d 589, 597 (D. Del. 2005).

PBGC certifies that it has performed a reasonable search and disclosed all records responsive to Morales's requests. Insofar as Morales's Complaint sought fulfillment of his outstanding requests, his demands are moot. Morales, however, challenges the sufficiency of PBGC's production in several respects. Following the hearing on September 29, 2011, the Court conducted in camera review of all redacted documents pursuant to 5 U.S.C. § 552(a)(4)(B). The Court now addresses Morales objections seriatim.

### i. Employee Payroll, Leave, and Attendance Records

Morales's FOIA Request No. 2010-1764 sought "[a] copy of my [sic] Employee Payroll, Leave and Attendance file . . .", "[a] copy of his Personnel File . . .", "[a] copy of his Employee Relations File . . .", "[a] copy of Mr. Morales' Personnel Security Investigation Records . . .", and "[a]ll documents reflecting any time and attendance entries made by anyone in C[ontract] C[ontrols] D[ivision] for Mr. Morales from November, 2009 through present." Request No. 2010-2295 sought this same information, but also added a further request for information related to Morales's demand for an inquiry into his claims of harassment by PBGC's Harassment Investigation Committee.

In PBGC's final response to this request it provided, <u>inter alia</u>, leave submission slips, certain emails from Morales reflecting requests for leave time, and handwritten Flex Time Sheets on which employees sign in and out of work. PBGC redacted the names of Morales's coworkers on the Flex Time sign-in sheets pursuant to FOIA exemption (b)(6), which permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Morales speculates that these Flex Time Sheets "may very well be the type of information that is supposed to be located within" his Employee Payroll, Leave, and Attendance Records (a recognized system of employee records under the Privacy Act) and contends that if they were, they should have been disclosed to him in full, without redactions. Pl.'s Opp. 26–27, Docket No. 16.

PBGC argues persuasively that the Flex Time Sheets do not fall within the category of Employee Payroll, Leave, and Attendance Records because they do not pertain to a specific employee and would not be retrievable by searching for any given employee's name. See

Walker v. Gambrell, 647 F. Supp. 2d 529, 537 (D. Md. 2009) (a record is not within a Privacy Act-covered "system of records" unless the agency is able to "retrieve the [record] by searching under Plaintiff's name or identifier"); Decl. of Melinda Fitzpatrick, Docket No. 19-1 (flextime records are filed by pay period). More importantly, Morales misunderstands the Privacy Act and the nature of its interaction with FOIA. Even if the Flex Time Sheets were included within a system of records, disclosure of which is mandated by the Privacy Act, this would not compel their disclosure in unredacted form.

The Privacy Act states that when an agency has in its possession a record about an individual in a "system of records," the agency is generally barred from disclosing that record to any person unless an exception applies. See 5 U.S.C. § 552a(b). The enumerated exceptions include when the individual to whom the record pertains gives his consent, and when disclosure is mandated by FOIA. Id. The Privacy Act also permits an individual to request access to "his record or to any information pertaining to him." 5 U.S.C. § 552a(d)(1).

Thus, under the terms of the Privacy Act, Morales is entitled only to that information in the system of records that pertains to him. See Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1120–21 (D.C. Cir. 2007). PBGC is barred from disclosing information relating to other employees absent their consent. Moreover, the definition of Employee Payroll, Leave, and Attendance Records provides that "the records listed herein are included only as pertinent or applicable to the individual employee." 61 FR 18184-01. To the extent that FOIA independently compels disclosure, PBGC is permitted under exemption (b)(6) to redact the records by removing the names of Morales's fellow employees. See Judicial Watch, Inc. v. U.S., 84 F. App'x 335, 338–39 (4th Cir. 2004) (finding that names of federal employees are encompassed within the privacy interest protected by exemption (b)(6) and holding that the

negligible public interest makes disclosure unwarranted in the absence of a compelling allegation of agency corruption or illegality); see also Berger v IRS, 487 F. Supp. 2d 482, 504–05 (D.N.J. 2007) (holding that time sheet information of IRS employee was exempt from disclosure under (b)(6).

### ii. Employee Relations File

A similar analysis applies to Morales objections regarding disclosure of documents he claims should have been included in his Employee Relations File.  In response to Morales's requests, PBGC produced 158 pages of unredacted documents relating to an investigation conducted by its Harassment Investigation Committee in connection with claims of workplace harassment lodged by Morales.  It redacted 24 pages of emails to remove legal communication between PBGC counsel and PBGC staff as well as other privileged, pre-decision discussions.  In support of these redactions, PBGC asserts FOIA exemption (b)(5), which shields all intra-agency communications "which would not be available by law to a party other than an agency in litigation with the agency."

Again, Morales speculates that these emails should be part of his Employee Relations File, which is defined to include "[n]otices of reductions in force or disciplinary or performance-based actions and employees' replies to such notices, employees' notices of grievance and appeal, investigative reports, records of proceedings, appeal decisions, and related information." 60 FR 57462-01.  Yet this description would seem to exclude emails between PBGC counsel and staff discussing how to respond to a complaint.  In addition, as with the Flex Time Sheets, the record does not indicate, and Morales has not alleged, that these emails would have been retrievable by searching for his name or other unique identifier.  See Walker v. Gambrell, 647 F.Supp.2d 529, 537 (D. Md. 2009) (emails concerning plaintiff were not part of the system of

records absent evidence indicating that they were kept in a filing system and were retrievable under the employee's name).

Though the records did fall within the scope of Morales's FOIA request, the Court's review establishes that the redactions were proper under exemption (b)(5). The Fourth Circuit has interpreted this exemption to incorporate both attorney-client and work-product privileges, as well as the deliberative process privilege affecting pre-decisional communications. See Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1251 (4th Cir. 1993); see also Ethyl Corp. v. U.S. Envtl. Protection Agency, 25 F.3d 1241, 1248 (4th Cir. 1994).

### iii. Law Firm Contracts

Morales's request Nos. 2010-1549 and 2010-2341 sought copies of "all contracts awarded by PBGC to any attorney and/or law firm . . . and any information, in whatever format, as regards the awarding of the contracts . . . including . . . the budget debited to pay for the contract . . ." as well as "any sole source contract awarded to any attorney and/or law firm from . . . all information, in whatever format, pertaining to the award of the sole source contract . . ." for certain specified years. In response, PBGC produced copies of fourteen contracts with law firms and expert witnesses. Several of these were redacted to remove provisions relating to forecasted hourly rates that would apply if PBGC were to exercise options allowing it to extend the contracts.

PBGC argues that these redactions were proper under exemption (b)(4) of FOIA, which protects "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). An agency asserting this exemption must demonstrate that the information constitutes "(1) trade secrets and commercial or financial information, (2) obtained from a third person outside the government, (3) that is privileged or

confidential." Wickwire Gavin, P.C. v. United States Postal Serv., 356 F.3d 588, 591 n.5 (4th Cir. 2004). Morales responds that the exemption is inapplicable in this case because the contracts in question were not competitively bid.

Financial information is "confidential" and, therefore, within the scope of exemption (b)(4) if it is required to be submitted to the Government and if its disclosure is "likely . . . to cause substantial harm to the competitive position of the person from whom the information was obtained." Nat'l Parks & Conservation Assoc. v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974). Though the Fourth Circuit does not appear to have addressed the question directly, courts in the District of Columbia have routinely held that option year pricing is confidential and properly withheld under exemption (b)(4). See Canadian Commer. Corp. v. Dep't of Air Force, 514 F.3d 37, 43 (D.C. Cir. 2008); McDonnell Douglas Corp. v. Dep't of Air Force, 375 F.3d 1182, 1189 (D.C. Cir. 2004); Landfair v. Dep't of Army, 645 F. Supp. 325, 328–29 (D.D.C. 1986).

In this instance, the Court finds it immaterial that the contracts at issue were negotiated rather than competitively bid. In either case, option year pricing would give competitors of the present contractors leverage with which to persuade PBGC to open the contracts for bidding or renegotiation with others rather than exercise its current option, thus harming the current contractors' competitive position. Moreover, while the public has a strong interest in information concerning how much government agencies actually pay for goods and services, that interest is significantly less compelling with regard to hypothetical future prices.

### iv.  Personnel Files

Morales next objects that while PBGC's disclosure of his Personnel File contained several awards that he received early in his tenure, it is also missing certain others that he claims to have received while employed in the Financial Operations Department between 2000 and

2009.  According to the declaration of April Edwards, the PBGC Human Resources Specialist in charge of employees' Official Personnel Folders ("OPFs"), there is good reason for this discrepancy.  Under the Office of Personnel Management's Guide to Personnel Recordkeeping, which became effective January 1,1999, the only awards authorized for long-term OPF retention are (1) performance awards received from 1986 to 1998, and (2) those post-January 1, 1999 awards considered "presidential rank" awards and separation incentives.  Edwards Decl., Docket No. 19-2.  Because those awards the absence of which Morales protests were given after January 1, 1999, and because none was a "presidential rank" award or separation incentive, they were not a part of his OPF.

Likewise, Morales claims he did not receive all of his Personnel Security Investigation Records insofar as he did not receive the actual results of the investigations.  In response, PBGC has submitted the declaration of Laura Stitt.  Ms. Stitt is the manager of PBGC's Facility Services Division ("FASD"), which maintains personnel security files.  Stitt Decl., Docket No. 19-3.  Ms. Stitt declares that certifications of investigations are the only documents related to the background checks that were maintained in Morales's personnel file.  As such, Morales was directed to the Office of Personnel Management as the custodian of the investigation results.  See Correspondence from William Fitzgerald to Pl.'s Counsel (May 24, 2010), Docket No. 9-3 Att. 15.

It appears from the record that PBGC conducted a reasonably thorough search for records responsive to Morales's requests.  As to those additional records that Morales claims should have been included but were not, PBGC not only certifies that these records were not contained in its files but also submits reasonable explanations as to why this should be the case.  In sum, the

Court's review of the evidence reveals that Morales has received all those records to which he is entitled. PBGC is, therefore, entitled to summary judgment.

### c. Attorneys' Fees

Finally, Morales seeks an award of attorneys' fees. On this subject, FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(E)(i). A litigant may be said to have substantially prevailed if he obtains relief through either a court order or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." Id. § 552(a)(E)(ii). Morales asserts that, because PBGC had stopped processing his requests and did not make full and final disclosure until after he was forced to file suit, he can be said to have substantially prevailed.

A FOIA plaintiff is not absolutely barred from an award of attorney fees when the government acts to moot a claim before judgment has been entered in his suit. Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704 (D.C. Cir. 1977). Nor, however, does section 552(a)(4)(E) provide for an automatic award of attorneys' fees to every successful FOIA plaintiff. The decision whether to award fees is left to the discretion of the district court. Consideration of a motion for fees requires a multifarious analysis of several factors, including: (i) whether the documents released were of general public interest, (ii) commercial incentive and pecuniary benefit to the complainant, (iii) the nature of the complainant's interest in the records sought, (iv) the reasonableness of the government's asserted legal basis for withholding, (v) whether the prosecution of the plaintiff's action could reasonably have been regarded as necessary, and (vi) whether his suit had a substantial causative effect on the delivery of the

information.  Id. at 711, 714; see also Reinbold v. Evers, 187 F.3d 348, 362 n.16 (4th Cir. 1999).  In short, fees should be awarded "where doing so will encourage fulfillment of the purposes of FOIA."  Nix v. United States, 572 F.2d 998, 1007 (4th Cir. 1978).  Considering these factors, the Court finds that an award of fees is not justified in this case.

As an initial matter, Morales's suit may well have had a substantial causative effect on PBGC's final delivery of responsive documents.  While the Court found no evidence of bad faith or a conscious effort to improperly delay production on the part of PBGC, the record does reveal a rather confused and disorganized system of processing FOIA requests.[1]  Morales clearly felt that he had no recourse but to take PBGC to court, and there is a substantial likelihood that doing so caused PBGC to take his requests more seriously and to devote the time and attention necessary to ensure that they were processed quickly and carefully.

In the end, however, it is clear that the overwhelming majority of Morales's requests were made, not to serve the public interest or inform the public about the action of government agencies, but to substitute for or supplement discovery in Morales's personal Title VII suit.  For example, in addition to extensive records concerning his own employment, Morales requested information relating to his request for an investigation by PBGC's Harassment Investigation Committee, as well as information relating to the grade, step, and position of various PBGC employees referenced in his Title VII complaint.  The only inquiry that might have yielded information of public benefit was Morales's request for information relating to contracts awarded to law firms.

---

[1] For example, Morales has submitted delivery confirmations showing that PBGC in fact received FOIA requests and payment that it claims either not to have received or to have received only weeks later.  Some had to be re-sent multiple times.  Additionally, while the Court need not thoroughly analyze the matter, there is some evidence that PBGC may have improperly assessed certain fees relating to the processing of various requests.

Morales is certainly correct that "FOIA requests can be made for any reason whatsoever" and that "as a general rule, the identity of the requesting party does not have any bearing on proper disclosure of information under the act." Pl.'s Opp. 37, Docket No. 11. The identity and motive of the requester are entirely relevant, however, in assessing a motion for the award of costs and fees. The Fourth Circuit has stated that FOIA "was not designed to supplement the rules of civil discovery." Id. at 1003; see also NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978) ("FOIA was not intended to function as a private discovery tool.") (emphasis in original); J.P. Stevens & Co. v. Perry, 710 F.2d 136, 143 (4th Cir. 1983) (where plaintiff sought to use FOIA to obtain documents that would be used in later Title VII litigation, "Robbins Tire makes clear that such premature discovery was not intended"). Morales does not deny that this was his intent, but rather attempts to turn the public/private benefit analysis on its head by claiming that his Title VII suit "is arguably a matter of public benefit, as the investigation of civil rights violations and the elimination of disparate treatment and derogatory conduct against persons based upon their race or national origin benefits the public as a whole." Pl.'s Supp. Mot. for Attorneys' Fees, Docket No. 38 at 8–9. The reasoning of Nix, Robbins Tire, and J.P. Stevens & Co. (which itself involved a Title VII suit) forecloses such an argument.

The Court declines to award costs and fees because Morales is using FOIA as a substitute for civil discovery and not to advance the purposes for which FOIA was enacted. Morales's requests, contained his Complaint and in his Supplemental Motion for Attorneys' Fees (Docket No. 38) will be denied.

## IV.  CONCLUSION

For the foregoing reasons the Court will, by separate Order of even date:

1. GRANT PBGC's Motion to Withdraw its initial Motion to Dismiss (Docket No. 12);

2. GRANT PBGC's Motion to Dismiss or Alternately for Summary Judgment (Docket No. 12), construed as a Motion for Summary Judgment;

3. DENY Morales's Supplemental Motion for Attorney Fees (Docket No. 38); and

4. DENY PBGC's Motion to Strike Morales's Supplemental Motion for Attorney Fees (Docket No. 39).

Dated this 25th day of January, 2012.

/s/
_____
Benson Everett Legg
United States District Judge